UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD ALAN SHORT,

Petitioner,

v.                                          CASE NO. 2:09-CV-12171
                                            JUDGE DAVID M. LAWSON
MITCH PERRY,[1]                             MAGISTRATE JUDGE PAUL J. KOMIVES

Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION ................................................................ 2
II.   REPORT ........................................................................ 2
      A.   *Procedural History* ..................................................... 2
      B.   *Factual Background Underlying Petitioner's Conviction* .................. 4
      C.   *Standard of Review* .................................................... 5
      D.   *Prosecutorial Misconduct (Claim I)* .................................... 7
           1.   *Clearly Established Law* .......................................... 7
           2.   *Analysis* ......................................................... 9
                a. False Testimony ................................................. 9
                b. Arguing Facts Not in Evidence .................................. 11
      E.   *Ineffective Assistance of Counsel (Claim II)* .......................... 13
           1.   *Clearly Established Law* .......................................... 14
           2.   *Analysis* ......................................................... 16
                a. Failure to Object to Prosecutorial Misconduct .................. 16
                b. Failure to Impeach Pierce ...................................... 16
                c. Failure to Question Nurse ...................................... 18
      F.   *Newly Discovered Evidence (Claim III)* ................................. 18
      G.   *Evidentiary Hearing* ................................................... 21
      H.   *Recommendation Regarding Certificate of Appealability* ................. 22
           1.   *Legal Standard* ................................................... 22
           2.   *Analysis* ......................................................... 24
      I.   *Conclusion* ............................................................ 24
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ........................................ 25

---

[1]By Order entered this date, Mitch Perry has been substituted in place of Jeffrey Woods as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Gerald Alan Short is a state prisoner, currently confined at the Newberry Correctional Facility in Newberry, Michigan.

2.      On July 8, 2005, petitioner was convicted of third degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(c), following a jury trial in the Kent County Circuit Court. On August 23, 2005, he was sentenced as an habitual offender to a term of 15-30 years' imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE DEFENDANT IS ENTITLED TO A UNANIMOUS VERDICT ON THE CHARGE WHERE THE COURT GAVE THE JURY ALTERNATIVES FOR PENETRATION IN A CRIMINAL SEXUAL CONDUCT 3RD DEGREE CASE WHERE THE PENETRATIONS USED WERE ALL SEPARATE ACTS.

II.     THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY FOR AN OFFENSE TO WHICH THE DEFENDANT DID NOT HAVE A PRELIMINARY EXAMINATION, THE PROSECUTOR DID NOT MAKE A MOTION TO AMEND OR ADD ANY CHARGES, NO ORDER TO AMEND CHARGES WAS ENTERED, AND THE DEFENDANT WAS GIVEN NO NOTICE OF THE AMENDED CHARGES.

III.    WHETHER THE DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE THE CASE WAS NOT PROVEN OUTSIDE OF THE DEFENDANT'S STATEMENT.

IV.     DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE THE TRIAL COURT ERRED IN SCORING POINTS FOR OV7.

V.      THE SENTENCE COURT ERRED WHEN IT SCORED THE DEFENDANT 15 POINTS FOR OFFENSE VARIABLE 8.

In a supplemental brief filed by new counsel, petitioner raised three additional claims:

    I.      THE PROSECUTOR FAILED TO CORRECT FALSE TESTIMONY THAT HE ELICITED FROM THE JAILHOUSE SNITCH.  THE PROSECUTOR REPEATEDLY SUGGESTED THAT MR. SHORT POISONED THE COMPLAINANT WITH G.H.B. DESPITE THE COMPLETE ABSENCE OF EVIDENCE THAT THIS OCCURRED.  THE PROSECUTOR COMMITTED MISCONDUCT AND MR. SHORT IS ENTITLED TO A NEW TRIAL.

    II.     TRIAL COUNSEL FAILED TO OBJECT TO PREJUDICIAL LIES FROM THE SNITCH, AND FAILED TO IMPEACH THE SNITCH REGARDING THESE LIES, IN WHICH COUNSEL SET UP IMPEACHMENT ON. COUNSEL FAILED TO ELICIT TESTIMONY ON THE INTERACTION OF ALCOHOL AND PAXIL THAT THE COMPLAINANT ADMITTED TO TAKING.  COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S REPEATED SUGGESTIONS THAT MR. SHORT POISONED THE COMPLAINANT WITH GHB. MR. SHORT IS ENTITLED TO A *GINTHER* HEARING IN ORDER TO DEVELOP THE ISSUE.

    III.    AFTER THE TRIAL, TWO SEPARATE WITNESSES WROTE AFFIDAVITS DISCLOSING FACTS THAT SUGGEST MR. SHORT'S INNOCENCE.  A NEW TRIAL IS WARRANTED DUE TO NEWLY DISCOVERED EVIDENCE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Short*, No. 266368, 2007 WL 3119401 (Mich. Ct. App. Oct. 25, 2007) (per curiam).

    4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Short*, 480 Mich. 1135, 745 N.W.2d 799 (2008).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 4, 2009.  As grounds for the writ of habeas corpus, he raises the three claims raised in his supplemental brief in the Michigan Court of Appeals.

    6.    Respondent filed his answer on December 10, 2009.  He contends that petitioner's prosecutorial misconduct claim is barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

3

7.      Petitioner filed a reply brief on January 11, 2010.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the December 2003 sexual assault of Kelly Fitzgerald in

Cedar Springs, Michigan.  The evidence adduced at trial was accurately summarized in the initial brief

filed by petitioner's counsel in the Michigan Court of Appeals:

> The alleged victim was Kelly Fitzgerald.  Ms. Fitzgerald testified that she is a 34 year old woman who began her evening on December 28 by attending a work Christmas party at the Winter Inn Bar.  She arrived at approximately 7:00 - 7:30 pm. She was drinking vodka and 7-up.  From the Winter Inn, she went to Turk Lake Bar where she had ". . . a couple drinks . . ."  After spending 1 - 1.5 hours at the Turk Lake Bar, Ms. Fitzgerald went to the Roundup.  The Roundup is a bar in Cedar Springs, Michigan.  While at the Roundup, she consumed more vodka/7-up. At the Roundup, she ran into the defendant who invited a large number of people to his house after the bar.  Ms. Fitzgerald accepted and went to the defendant's house with 30 to 40 other people.
>
> Ms. Fitzgerald had consumed 6 - 7 drinks (Vodka/7-up) from the time she arrived at the Winter Inn to the time when she left the Roundup to go to the defendant's residence.
>
> After being at the defendant's house for awhile, Ms. Fitzgerald recognized an acquaintance.  The acquaintance was witness April Salmon Edwards.  While hugging, the two fell on the floor and Ms Fitzgerald hit her head and snapped her neck.  The fall resulted in her becoming dizzy and disoriented.  Ms. Fitzgerald then sat on the couch for a period of time and remained disoriented.  She then testified that the next thing she knew the defendant was on top of her having sex with her.
>
> Ms. Fitzgerald testified that he was having penile/vaginal penetration with her. She did not testify as to any other form of penetration.  Ms. Fitzgerald then said the defendant raised his hand and she remembers nothing else.
>
> The next morning when she awoke and was leaving, at that time the defendant asked where she was going.  Ms. Fitzgerald then advised that the defendant had conducted un-consented sex with her.  The defendant denied the action.
>
> Ms. Edwards is a friend of the defendant and an acquaintance with Ms. Fitzgerald.  She was at the party the night before and fell with Ms. Fitzgerald.  While hugging Ms. Fitzgerald, the two fell.  Ms. Edwards contends that Ms. Fitzgerald did not seem disoriented as a result of the falling, but rather she had drank too much and was in no condition to drive.  So Ms. Edwards took her to lay down on the defendant's bed.
>
> Witness [Roy] Pierce was a jail-house snitch.  He testified that the defendant told him about committing the sexual act.
>
> Witness [Cindy] DeBiak works/volunteers for the YWCA as a sexual assault nurse examiner.  She testified that she examined Ms. Fitzgerald.  The examination did

4

not result in any physical evidence.

Witness [Lt. Greg] Parolini works for the Kent County Sheriff's Department. He is a special trained interviewer in criminal cases. He talked with the defendant about the incident. He testified as to inconsistencies in the defendant's statements. He then was allowed to use this gathered information to give his opinion that the defendant was lying.

Witness [Jason] Schaefer is a police officer with the Cedar Springs Police Department. He also testified that he interviewed the defendant and found inconsistencies in his version of events.

[Defense Witness Corey] Nelson was a co-worker and friend of the defendant. He did not know Ms. Fitzgerald, but remembered her because she was giving back-rubs and was a masseuse. He witnessed Ms. Fitzgerald and Ms. Edwards spinning around and they both "got a little crazy." He then witnessed Ms. Fitzgerald go into the bathroom with Matt Cruz who was another person present at the party. They remained in the bathroom for approximately 15 - 20 minutes.

Def.-Appellant's Br. on Appeal, in *People v. Short*, No. 266368 (Mich. Ct. App.), at 6-9 (citations to transcript omitted).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

5

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Prosecutorial Misconduct (Claim I)*

Petitioner first contends that the prosecutor committed misconduct by allowing Pierce to give false testimony without correcting that testimony and by arguing facts not in evidence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation omitted). "[T]he

---

[2]In rejecting petitioner's claims, the Michigan Court of Appeals reviewed them only for plain error, noting that petitioner had not preserved the claims for appeal by objecting at trial. *See Short*, 2007 WL 3119401, at *3. Based on this, respondent argues that petitioner's claims are procedurally defaulted. Although this is likely true, petitioner argues that counsel was ineffective for failing to object, an argument which if correct would provide cause for petitioner's procedural default. Because the court must assess the underlying merits of the claims to assess whether counsel was ineffective, I proceed directly to the merits.

touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id.* at 269. It is equally well established, however, that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*,

8

424 F. Supp. 307, 318 (N.D. Cal. 1976). Thus, to succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

    2.    *Analysis*

*a. False Testimony*

Petitioner contends that Pierce, the jailhouse informant, testified falsely in two respects. First, Pierce testified at trial that petitioner told him that he was worried about another CSC charge. In response to a question about petitioner telling Pierce that the victim had defecated on the sheets, Pierce stated: "He said he was sure – he said he wasn't worried about the case, he was sure he could beat it . . . . The only thing that he's got to worry about goin' against him is the other CSC that's on his file." Trial Tr., dated 7/7/05, at 82. The prosecutor immediately moved on to another line of inquiry, and neither the prosecutor or any other witness again mentioned an additional CSC charge against petitioner. It is undisputed that petitioner did not have any other pending CSC charge or conviction. The Michigan Court of Appeals essentially concluded that this evidence was not material,

reasoning that "[i]t is unlikely . . . that in light of all the other evidence presented against defendant, that this isolated comment tipped the scale in favor of his conviction." *Short*, 2007 WL 3119401, at *3. This determination was reasonable. As noted above, Pierce's statement was an isolated mention of a pending CSC charge with no elaboration, and with no details provided. Further, the matter was not mentioned again throughout the trial. In light of the victim's testimony, there is not a "reasonable likelihood" that Pierce's brief statement "affected the judgment of the jury." *Giglio*, 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 271). At a minimum, the Michigan Court of Appeals was not unreasonable in so concluding.

Second, petitioner contends that Pierce committed perjury when, upon questioning from the prosecutor, he testified that while he was detained at the Kent County Jail with petitioner he was not taking any medications. *See* Trial Tr., dated 7/7/05, at 78. On the contrary, petitioner contends, Pierce was taking psychotropic medications at that time. This fact, however, was well known to counsel. Prior to trial, the court discussed with the prosecutor and defense counsel whether the defense would be permitted to inquire of Pierce whether he had any suicidal ideation during his detention in the Kent County Jail. During this discussion, counsel indicated that "[i]n looking over the records that I've been provided concerning his stay at the Kent County Correctional Facility, Mr. Pierce was prescribed psychotropic medication . . . ." Trial Tr., dated 7/6/05, at 10. Both the prosecutor and the court agreed that the witness could be questioned regarding whether he was on any medications at the time that may have affected his perception or memory. *See id*. at 12-13.[3] Thus,

---

[3] I note that it is not clear that the Michigan Court of Appeals was correct in stating that "[i]t is apparent from the record that the prosecutor knew that the cellmate took psychotropic medications in jail." *Short*, 2007 WL 3119401, at *3. To be sure, defense counsel indicated that, from his review of the records, it appeared that Pierce had been "prescribed psychotropic medication." Trial Tr., dated 7/6/05, at 10. The prosecutor's response to counsel's argument regarding Pierce's suicidal ideation, however, suggests that the prosecutor did not know this fact. *See id*. at 12 (emphasis added) ("I'd agree

defense counsel was well aware that Pierce did not testify truthfully concerning his medications, and was prepared if he so desired to counter that testimony. Counsel chose, however, not to do so.[4] "[T]here is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object." *Beltran v. Cockrell*, 294 F.3d 730, 736 (5th Cir. 2002) (quotation omitted); *see also*, *United States v. Mangual-Garcia*, 505 F.3d 1, 10-11 (1st Cir. 2007); *Routly v. Singletary*, 33 F.3d 1279, 1286 (11th Cir. 1994). Because defense counsel was well aware of the medications and medical treatment Pierce had received at the Kent County Jail, petitioner cannot show that the prosecutor's failure to correct Pierce's testimony violated his right to due process. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

### b. Arguing Facts Not in Evidence

Petitioner also contends that the prosecutor committed misconduct by arguing that petitioner had drugged the victim with the date-rape drug GHB. During opening statement, the prosecutor explained the element of the crime that required him to show that the victim was physically helpless or mentally incapacitated:

> And there's a lot of definitions for that. In other words, was she too intoxicated, under some kind of drug that made her susceptible to what he did to her. You'll hear

---

with Mr. Stevenson that *if* he was on meds of some sort, that would be relevant to his state of mind certainly."). Further, counsel did not state what medications the records showed Pierce as having been prescribed. The jail records for Pierce attached to petitioner's application for leave to appeal in the Michigan Supreme Court state simply that Pierce was prescribed "Psyc medication." This could refer to any psychiatric medication, including a whole host of mild medications that would not have affected Pierce's memory or perception. Thus, while it is clear that Pierce lied in stating that he had been prescribed no psychiatric medications, the record falls far short of establishing either that Pierce was taking a psychotropic medication that would have affected his perception and recall, or that the prosecutor knew that Pierce was taking such medications.

[4]In fact, counsel's failure to do so is part of petitioner's ineffective assistance of counsel claim.

11

> evidence that that did happen.  You'll also hear evidence that earlier in the evening,
> she and April Edwards, an acquaintance of hers, I don't know why, they were tussling
> around, rolling around, whatever, and Ms. Fitzgerald did strike her head and she was
> a little dizzy from that.  But a lot of her behavior, the evidence will show, that even
> though she had at least seven drinks her behavior was even a little more dizzy or
> clutzy like there may have been something else that she ingested unknowingly that
> went along with this.  And we don't know because if it would have been a GHB or
> something, evidence will show that's out of the system within 12 hours and they can't
> test for it.

Trial Tr., dated 7/6/05, at 96.  During the cross examination of Officer Jason Schaefer, defense

counsel asked Schaefer whether he had ever heard of Visine being used as a date-rape drug.  Schaefer

responded that he had not.  *See id.*, dated 7/7/05, at 149.  On redirect examination, the prosecutor

asked Schaefer whether he had ever heard of someone putting GHB. or some other drug in a Visine

container; Schaefer responded that he had not, but that he was familiar with people putting drugs in

normal containers to hide their true identity.  *See id.* at 149-50.  Finally, during closing argument, the

prosecutor responded to petitioner's evidence suggesting that the victim had gone into the bathroom

with other men:

> Now, Ms. Fitzgerald testified she didn't go into the bathroom, didn't remember it, or
> didn't go in it.  Use your own memories on that.  But even if she did, how does it
> negate what he did to her later on.  I mean, if this is what the defense is gonna put up
> that she was in the bathroom with another guy so this is gonna happen, she was in his
> bedroom, in the bed, she was out of it.  Whether from alcohol, from falling on her
> head, or as Mr. Pierce indicated, the defendant told him he put something in her beer.
> We've all heard of GHB and drugs, we've–there was no tests done for that, no one
> knew.  According to Mr. Pierce, that's what the defendant told him out at the jail.

*Id.*, dated 7/8/05, at 23.

Petitioner contends that these comments were improper because there was no evidence

presented at trial that he gave GHB to the victim.  The Michigan Court of Appeals rejected this claim,

reasoning that "there were facts in evidence that defendant drugged the victim," and thus "[t]he

prosecutor's argument . . . constituted proper argument because suggesting that defendant used GHB

12

is a reasonable inference from the testimony that defendant drugged the victim." *Short*, 2007 WL 3119401, at *4.  This determination was reasonable.  As the court of appeals correctly observed, although there was no direct evidence that petitioner gave the victim GHB, Pierce testified that petitioner told him that he had drugged the victim with Visine.  There was also testimony from the victim that petitioner had given her a beer, and that she had become disoriented and dizzy at some point in the evening.  Thus, it was a fair inference from the evidence that the victim had been drugged with something.  And the prosecutor did not argue that the victim had in fact been drugged with GHB; he merely suggested that it was possible but explicitly stated "we don't know."  In light of these qualifications included by the prosecutor in his argument, "the jurors would know that these comments were inferences, and they would not be confused into believing that these comments were factual evidence." *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000).  Further, as the prosecutor recognized in his closing argument, it was ultimately irrelevant whether petitioner had drugged the victim.  If the victim was mentally or physically incapacitated for any reason–because she had been drugged, because she was drunk, or because of hitting her head when she fell to the floor–petitioner could be found guilty regardless of whether he was the cause of her incapacitation. *See People v. Lall*, No. 273165, 2008 WL 2468467, at *5 (Mich. Ct. App. June 19, 2008).  In these circumstances, the Michigan Court of Appeals's conclusion that the comments were proper was a reasonable one.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Ineffective Assistance of Counsel (Claim II)*

Petitioner next contends that counsel was ineffective in a number of respects.  Specifically, petitioner contends that counsel was ineffective for: (1) failing to object to the prosecutor's misconduct; (2) failing to impeach Pierce with evidence that he was taking medications despite his testimony to the contrary; and (3) failing to question the nurse who examined the victim about the

dangers of mixing alcohol and antidepressants.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.     *Clearly Established Law*

      The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.*  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner

bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

a.  *Failure to Object to Prosecutorial Misconduct*

Petitioner first contends that counsel was ineffective for failing to object to the prosecutor's

misconduct.  As explained above, however, the actions of the prosecutor to which petitioner contends an objection should have been made did not constitute misconduct, either because the comments were proper or because they were not prejudicial.  Thus, any objection would have been futile.  Counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Failure to Impeach Pierce

Petitioner next contends that counsel was ineffective for failing to impeach Pierce with evidence that he was taking psychotropic medication at the time petitioner confessed to him.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

 "[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.); *see Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001); *Dows v. Wood*, 211 F.3d 480, 489 (9th Cir. 2000).  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell*, 194 F. Supp. 2d at 1219; *accord Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002) (Rosen, J.).  The mere fact that other avenues of impeachment may have existed does not render counsel ineffective; counsel need not "develop every bit of testimony through all available inconsistent statements."  *Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also*, *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (internal quotation omitted) (counsel not ineffective even though "other testimony might have been elicited from those who testified."); *United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994) (counsel not ineffective where counsel could have elicited

16

additional impeachment information on cross-examination).

Here, as explained above in connection with petitioner's prosecutorial misconduct claim, the record does not support the conclusion that Pierce was taking psychotropic medication that affected his ability to perceive and recall the events to which he testified.  At the most, then, counsel's impeachment on this issue would have provided some additional impeachment of Pierce's general credibility, because he testified that he had not taken any such medications.  Counsel, however, significantly impeached Pierce's testimony in other respects.  For example, counsel elicited from Pierce that he did not report petitioner's confession until a month after he was released, *see* Trial Tr., dated 7/7/05; that petitioner implausibly confessed only to Pierce, whom he had just met, and to no one else, *see id*. at 88-89; and that Pierce had a vendetta against people charged with sexual assault, *see id*. at 89.  The record shows that counsel's cross-examination was more than adequate to meet the Sixth Amendment standard for effective assistance of counsel.  *See, e.g.*, *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995); *United States v. McKinney*, 954 F.2d 471, 481 (7th Cir. 1992); *Garcia v. Kuhlmann*, 897 F. Supp. 728, 730 (S.D.N.Y. 1995); *Wolfe v. United States*, 894 F. Supp. 1310, 1317 (D. Minn. 1995), *aff'd*, 92 F.3d 1190 (8th Cir. 1996). That one particular avenue was not fully explored does not support a finding that counsel's performance was deficient.  *See Millender*, 187 F. Supp. 2d at 872; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001) (Tarnow, J.). Further, in light of the fact that Pierce was already extensively impeached, and the fact that this questioning would not have impeached the testimony of the victim, there is not a reasonable probability that the result of the proceeding would have been different had counsel pursued this line of impeachment.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*c.  Failure to Question Nurse*

Petitioner next claims that counsel was ineffective for failing to question the nurse who examined the victim about the dangers of mixing alcohol and an antidepressant drug such as Paxil, which petitioner contends was responsible for the victim's condition on the night of the assault. This claim fails for two reasons. First, counsel in fact attempted to question the nurse regarding this matter, but the nurse was unable to answer because the matter was outside her area of expertise. *See* Trial Tr., dated 7/7/05, at 114-15. Second, petitioner cannot show that he was prejudiced by the absence of this evidence. As noted above, the only relevant factors were whether the victim was physically or mentally incapacitated and whether petitioner knew or had reason to know of her incapacitation. The cause of the incapacitation was irrelevant. Thus, even if as petitioner contends the victim's own act of drinking excessively while taking an antidepressant was the cause of her incapacitation, this fact would have provided no defense to the charges. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Newly Discovered Evidence (Claim III)*

Finally, petitioner contends that he is entitled to habeas relief on the basis of newly discovered evidence of his innocence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a

gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), overruled in part on other grounds, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). Here, petitioner's newly discovered evidence consists of affidavits from two individuals who were detained at the Kent County Jail at the same time as he and Pierce. These affidavits attack the credibility of Pierce. For example, Daniel Davis avers that Pierce told him that he was "going to get" petitioner, and that at no time did petitioner confess to Davis. *See* Aff. of Fact of Daniel Davis. Similarly, Craig Lobdell avers that

petitioner at no time confessed to him, and that Pierce told him he would do whatever it takes to have petitioner convicted. *See* Aff. of Fact of Craig A. Lobdell.

These affidavits are insufficient to constitute the type of new, reliable evidence of actual innocence sufficient to satisfy *Schlup*. *See Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"); *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted) ("Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence."). Newly discovered impeachment evidence does not provide sufficient evidence of actual innocence to overcome a procedural bar, much less does it provide sufficient evidence to support a free-standing innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence). This is particular so here, where the newly discovered impeachment evidence does not call into question the testimony of the victim, the principle witness against petitioner whose testimony alone was sufficient to establish petitioner's guilt beyond a reasonable doubt. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Evidentiary Hearing*

I also briefly note that petitioner is not entitled to an evidentiary hearing. Contemporaneous with his habeas application, petitioner filed a motion for evidentiary hearing. I previously denied the motion without prejudice as premature, indicating that the Court would order an evidentiary hearing should it become necessary. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under

Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) is a hearing is permitted under 28 U.S.C. § 2254(e)(2). Here, the Court need not address whether an evidentiary hearing is permitted under § 2254(e)(2) because such a hearing is not necessary.[5]

In deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court has explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
>
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Here, an evidentiary hearing is not necessary because petitioner's claims can be resolved on the record. Petitioner's prosecutorial misconduct claims are based on acts or omissions occurring on the record, as are his ineffective assistance of counsel claims. Further factual development of

---

[5]For the same reason, the Court need not consider whether an evidentiary hearing would have any utility in light of the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding that, with respect to any claim adjudicated on the merits to which § 2254(d) applies, the federal court's review is limited to the record that was in existence at the time of the state court decision).

petitioner's innocence claim is not appropriate because such a claim does not provide a basis for habeas relief.  Thus, an evidentiary hearing is not necessary to resolve petitioner's claims.

H.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

22

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons explained above. The record establishes that even though Pierce testified falsely in two respects, that false testimony was not material. Further, the prosecutor's comments were a fair inference from the record, and thus were not improper. Thus, the resolution of petitioner's prosecutorial misconduct claims, and his related ineffective assistance of counsel claim, is not reasonably debatable. With respect to petitioner's remaining ineffective assistance of counsel claims, counsel adequately and effectively cross-examined Pierce, and he attempted to question the nurse concerning the interaction of alcohol and Paxil. Further, there is not a reasonable probability that additional impeachment of Pierce would have changed the result, nor would testimony from the nurse about the dangers of mixing alcohol and Paxil have provided any defense to the charges against petitioner. Thus, the

23

resolution of these ineffective assistance of counsel claims is not reasonably debatable. Finally, it is beyond debate that petitioner's newly discovered evidence does not provide a basis for habeas relief, and that in any event his new evidence falls far short of that necessary to establish his innocence. Accordingly, the Court should deny petitioner a certificate of appealability.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 6/14/11


<div style="border:1px solid">

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on June 14,  2011.

                            s/Eddrey Butts
                            Case Manager

</div>